■ JACK L. INSELMAN & CO., INC., Respondent, v FNB FINANCIAL COMPANY, Appellant.—Order, Supreme Court, New York County, entered September 19, 1975, denying defendant's motion for summary judgment, and for judgment on its second and third counterclaims, unanimously reversed, on the law, and the motions granted, with $60 costs and disbursements to respondent. Guilford Industries, Inc., had a factoring agreement with FNB Financial Company as well as with its predecessors in interest. FNB lent money to Guilford based upon assignments of accounts receivable. FNB provided a further service of guaranteeing payment of certain accounts receivable if the account debtor was deemed by FNB to be creditworthy. Such arrangement, therefore, would place the burden of loss, in the event of insolvency of an account debtor, on FNB rather than Guilford. It would in no way prevent Guilford from entering into a contract with a prospective customer. Jack L. Inselman & Co., Inc., was a purchaser of fabric from Guilford. Guilford submitted certain of its contracts of sale with Inselman to the FNB credit department and FNB approved the credit risk up to a maximum of $60,000; i.e., all contracts of sale between Guilford and Inselman would be guaranteed as long as the aggregate of unpaid invoices did not exceed $60,000. The contracts between Inselman and Guilford contained a clause which stated: "Buyer's Credit—Terms and limits of credit are to be subject at all times to the approval of, and may be changed from time to time or entirely revoked by, the Credit Department of The First National Bank of Boston. If Buyer's credit is not approved, or its credit is entirely revoked, Buyer thereafter shall pay cash, less allowed discounts, if any, on or before delivery. If Buyer fails, within a reasonable time, to pay cash in advance when so required, Seller may, at its option, cancel the undelivered

portion of this order or contract." Inselman had invoices outstanding of over $54,000 and sought to place an order valued at $76,273.75 for additional goods. FNB advised Guilford that it would not entertain any credit risk on this new order. Guilford asked Inselman to make cash payment, pursuant to the terms of the contract, and when Inselman did not do so, Guilford declined to deliver the merchandise. Ultimately, an accord was reached wherein two invoices (valued at $64,810.44) were assigned to FNB and the outstanding $76,000 order was purchased by FNB upon the representation of Inselman that it would immediately make payment on the assigned invoices and purchase the balance of the $76,000 worth of merchandise at a later date. No payments or purchases were forthcoming. Inselman then brought this suit against FNB for its alleged interference with the contract between Guilford and Inselman. FNB, *inter alia,* counterclaimed for payment of the two assigned invoices. FNB's motion for summary judgment dismissing the complaint and granting judgment on the counterclaims was denied by Special Term. We would reverse. Guilford had the right pursuant to the contract terms to cancel at its option any undelivered portion of an order. Delivery was defined in the contract as acceptance of goods by common carrier. The cancellation by Guilford occurred prior to delivery and therefore the cancellation cannot be considered as a breach of the contract by Guilford. FNB only acted on its contractual right and to protect its economic interests when it declined to guarantee any further invoices of Inselman. This does not amount to a tortious interference *(Campbell v Gates,* 236 NY 457, 460). Since no tortious interference with contract was established by Inselman and no material issues of fact remain, summary judgment was a remedy available to FNB. Similarly, on the counterclaims of FNB, there was no evidence adduced sufficient to bar judgment in FNB's favor, and we accordingly grant FNB the relief requested. Settle order on notice. Concur—Stevens, P. J., Kupferman, Lupiano, Birns and Lane, JJ.